IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SERVSTOR TECHNOLOGIES LLC,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>QNAP SYSTEMS, INC.,<br><br>　　　　　　Defendant. | Case No. 2:25-cv-<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff ServStor Technologies LLC ("ServStor" or "Plaintiff") for its Complaint against QNAP Systems, Inc. ("QNAP" or "Defendant") for patent infringement alleges as follows:

**THE PARTIES**

1. ServStor is a limited liability company, organized and existing under the laws of the State of Texas, with its principal place of business located at 104 E. Houston Street, Suite 190, Marshall, Texas 75670.

2. Upon information and belief, QNAP is a corporation organized and existing under the laws of Taiwan, with its principal place of business located at 3F., No.22, Zhongxing Road, Xizhi District, New Taipei City, 221, Taiwan. Upon information and belief, QNAP does business in Texas and in the Eastern District of Texas, directly or through intermediaries.

**JURISDICTION**

3. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.  This Court has personal jurisdiction over Defendant. Defendant regularly conducts business and has committed acts of patent infringement and/or has induced acts of patent infringement by others in this Judicial District and/or has contributed to patent infringement by others in this Judicial District, the State of Texas, and elsewhere in the United States.

5.  In addition, or in the alternative, this Court has personal jurisdiction over Defendant pursuant to Fed. R. Civ. P. 4(k)(2).

6.  Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not a resident in the United States, and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

7.  Defendant is subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to its substantial business in this State and Judicial District, including (a) at least part of its past infringing activities, (b) regularly doing or soliciting business in Texas, and/or (c) engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to customers in Texas.

## **PATENTS-IN-SUIT**

8.  On October 13, 2009, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,602,773 (the "'773 Patent") entitled "Transferring Data to a Target Device". A true and correct copy of the '773 Patent is available at: https://patentimages.storage.googleapis.com/bf/a8/c2/fd0f41a4b7a690/US7602773.pdf.

9.  On March 30, 2010, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,688,814 (the "'814 Patent") entitled "Methods of Conveying Information Using Fixed Sized Packets". A true and correct copy of the '814 Patent is available at: https://patentimages.storage.googleapis.com/48/89/15/9514d2f5f05d39/US7688814.pdf.

10. ServStor is the sole and exclusive owner of all right, title, and interest in the '773 Patent and the '814 Patent (collectively, the "Patents-in-Suit" or "Asserted Patents") and holds the exclusive right to take all actions necessary to enforce its rights to the Patent-in-Suit, including the filing of this patent infringement lawsuit. ServStor also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

## FACTUAL ALLEGATIONS

11. The Patents-in-Suit generally cover systems and methods for routing data over a network.

12. The '773 Patent and the '814 Patent discloses methods and apparatuses for data transfer and communication, including packets, to disaggregated elements. The technology in the '773 Patent and the '814 Patent was developed by Charles Frank, Thomas Ludwig, Thomas Hanan, and William Babbitt. For example, this technology is implemented in microchips, servers, routers, ethernet switches, systems-on-a-chip ("SoCs"), Power over Ethernet ("PoE") switches, and ASICs, among other products. Exemplary infringing QNAP products include, but are not limited to, QNAP Routers (QHora & QMiro Series), such as QHora-301W, QHora-322, QHora-321, QMiro-201W; QNAP Guardian Series (QGD) Smart PoE Switches, such as QGD-1600P, QGD-1602P, QGD-3014-16PT; and QNAP SD-WAN Solutions (QuWAN), such as QuWAN Orchestrator and QuWAN vRouter Edition (collectively, the "Accused Products").

13. QNAP has infringed and is continuing to infringe the Patents-in-Suit by making, using, offering to sell, selling, and/or importing network switches, routers, and software which

implement the technology disclosed in the above patents-in-suit.[1]

## COUNT I
### (Infringement of the '773 Patent)

14. Paragraphs 1 through 13 are incorporated by reference as if fully set forth herein.

15. ServStor has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '773 Patent.

16. Defendant has and continues to directly infringe the '773 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '773 Patent. Such products include but are not limited to microchips, servers, routers, ethernet switches, SoCs, PoE switches, ASICs, and accompanying software that transmit packets over a network, such as the QHora-322.

17. For example, Defendant has and continues to directly infringe at least claim 11 of the '773 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include microchips, servers, routers, ethernet switches, SoCs, PoE switches, ASICs, and accompanying software that transmit packets over a network, such as the QHora-322. The QHora-332 is exemplary and representative of the Accused Products.

18. For example, the QHora-332 comprises a network interface configured to communicatively couple the apparatus to a network. The QHora-332 comprises storage having a storage location. The QHora-332 a controller coupled to the network interface and the storage and

---

[1] QNAP had knowledge of the Patents-in-Suit at least as of the filing of suits against their direct competitors alleging infringement of Patents-in-Suit. *See ServStor Technologies LLC v. Broadcom Corporation*, Case No. 2:24-cv-00761 (E.D. Tex.); *ServStor Technologies LLC v. ZTE Corporation*, Case No. 2:24-cv-00205 (E.D. Tex). At the very least, QNAP remained willfully blind to its infringement of the Patents-in-Suit.

configured to receive, from a first device via the network interface, a first packet including a command, a first address that corresponds to the storage location of the apparatus, and a second address that corresponds to a storage location of a second device. The QHora-332 comprises a controller coupled to the network interface and the storage and configured to transmit, to the second device via the network interface, a second packet to effect a transfer of data between the storage location of the apparatus and the storage location of the second device based at least in part on the command.

19.    For example, the QHora-332 allows for the transmission of packets over a network, as demonstrated below:



> **Quality of Service (QoS)**
>
> Quality of service (QoS) improves network traffic shaping by classifying and prioritizing different network devices and packets. QoS allows you to configure traffic policies and enabling these policies on the switch ports.
>
> To configure QoS settings, you must add the device to the QuWAN service and configure the settings using QuWAN Orchestrator.

[2]

20. Defendant has and continues to indirectly infringe one or more claims of the '773 Patent by knowingly and intentionally inducing others, including QNAP customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include the infringing technology.

21. Defendant, with knowledge that these products, or the use thereof, infringe the '773 Patent at least as of September 30, 2022[3], knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '773 Patent by providing these products to end-users for use in an infringing manner. Additionally, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, and instructing its officers, agents, and employees to not review the patents of others, including specifically those related to Defendant's specific industry, with the subjective belief that there was a high probability that Defendant would learn of its infringing activities, thereby remaining willfully blind to the '773 Patent at least as early as the issuance of the '773 Patent.

22. Defendant has and continues to induce infringement by others, including customers and end-users, with the intent to cause infringing acts by others or, in the alternative, with the

---

[2] *See, e.g.,* Qhora-322 User Guide at pgs. 62, 64, 67, available at: https://eu1.qnap.com/TechnicalDocument/Network/qhora/qhora-322-ug-en-us.pdf.

[3] On September 30, 2022, a ServStor representative sent QNAP correspondence, identifying the '773 Patent, among numerous other patents. Thereafter, on October 25, 2022, a representative of QNAP reached out to ServStor's representative in response to the correspondence.

belief that there was a high probability that others, including end-users, infringe the '773 Patent, but while remaining willfully blind to the infringement. Defendant has and continues to induce infringement by its customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's website, product literature and packaging, and other publications.[4]

23. Plaintiffs have suffered damages as a result of Defendant's direct and indirect infringement of the '773 Patent in an amount to be proven at trial.

24. Plaintiffs have suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '773 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT II
### (Infringement of the '814 Patent)

25. Paragraphs 1 through 13 are incorporated by reference as if fully set forth herein.

26. ServStor has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '814 Patent.

27. Defendant has and continues to directly infringe the '814 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '814 Patent. Such products include but are not limited to in microchips, servers, routers, ethernet switches, SoCs, PoE switches, ASICs, and accompanying software that transmit packets over a network, such as the QHora-322.

---

[4] *See, e.g.,* Qhora-322 User Guide, available at: https://eu1.qnap.com/TechnicalDocument/Network/qhora/qhora-322-ug-en-us.pdf.

28.     For example, Defendant has and continues to directly infringe at least claim 11 of the '814 Patent by making, using, offering to sell, selling, and/or importing into the United States products that microchips, servers, routers, ethernet switches, SoCs, PoE switches, ASICs, and accompanying software that transmit packets over a network, such as the QHora-322. The QHora-332 is exemplary and representative of the Accused Products.

29.     For example, the QHora-322 comprises a controller configured to generate a first packet having a data portion that is at least approximately equal in size to a native block size of a target device, which is smaller than a native block size of the apparatus, the first packet further having a first segment of a split identifier, the controller further configured to encapsulate the first packet into a data portion of a second packet, the second packet having a control portion with a second segment of the split identifier.  The QHora-322 comprises a network interface coupled to the controller, and configured to transmit the packet to the target device across a network.

30.     For example, the QHora-332 allows for the transmission of packets over a network, as demonstrated below:

<a>
</a>
<a>
</a>
<a>
</a>
<a>
</a>



5

31.    Defendant has and continues to indirectly infringe one or more claims of the '814 Patent by knowingly and intentionally inducing others, including QNAP customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include the infringing technology.

---

[5] *See, e.g.,* Qhora-322 User Guide at pgs. 62, 64, 67, available at: https://eu1.qnap.com/TechnicalDocument/Network/qhora/qhora-322-ug-en-us.pdf.

32. Defendant, with knowledge that these products, or the use thereof, infringe the '814 Patent at least as of the date of September 30, 2022[6], , knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '814 Patent by providing these products to end-users for use in an infringing manner. Additionally, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, and instructing its officers, agents, and employees to not review the patents of others, including specifically those related to Defendant's specific industry, with the subjective belief that there was a high probability that Defendant would learn of its infringing activities, thereby remaining willfully blind to the '814 Patent at least as early as the issuance of the '814 Patent.

33. Defendant has and continues to induce infringement by others, including customers and end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '814 Patent, but while remaining willfully blind to the infringement. Defendant has and continues to induce infringement by its customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's website, product literature and packaging, and other publications.[7]

34. Plaintiffs have suffered damages as a result of Defendant's direct and indirect infringement of the '814 Patent in an amount to be proven at trial.

---

[6] As stated above (*see* ¶ 21, n. 2) on September 30, 2022, a ServStor representative sent QNAP correspondence, identifying the '814 Patent, among numerous other patents. Thereafter, on October 25, 2022, a representative of QNAP reached out to ServStor's representative in response to the correspondence.

[7] *See, e.g.,* Qhora-322 User Guide, available at: https://eu1.qnap.com/TechnicalDocument/Network/qhora/qhora-322-ug-en-us.pdf.

35. Plaintiffs have suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '814 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, ServStor prays for relief against Defendant as follows:

a. Entry of judgment declaring that Defendant has directly and/or indirectly infringed one or more claims of the Patents-in-Suit;

b. An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with it, from further acts of infringement of one or more of the Patents-in-Suit;

c. An order awarding damages sufficient to compensate ServStor for Defendant's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

d. Entry of judgment declaring that this case is exceptional and awarding ServStor its costs and reasonable attorney fees under 35 U.S.C. § 285; and,

e. Such other and further relief as the Court deems just and proper.

Dated: June 20, 2025                                Respectfully submitted,

                                                    /s/ *Vincent J. Rubino, III*
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@fabricantllp.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@fabricantllp.com
Vincent J. Rubino, III

        NY Bar No. 4557435
Email: vrubino@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue, Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

John Andrew Rubino
NY Bar No. 5020797
Email: jarubino@rubinoip.com
Michael Mondelli III
NY Bar No. 5805114
Email: mmondelli@rubinoip.com
**RUBINO IP**
830 Morris Turnpike
Short Hills, New Jersey 07078
Telephone: (201) 341-9445
Facsimile (973) 535-0921

***ATTORNEYS FOR PLAINTIFF***
***SERVSTOR TECHNOLOGIES LLC***